**CODESPOTI & ASSOCIATES, P.C., et al.,**

v.

**Kevin BARTLETT, et al.**

**No. Civ. 3:97CV1395 (AHN).**

United States District Court, D. Connecticut.

March 29, 1999.

Ikechukwu Umeugo, Umeugo & Assoc., West Haven, CT, for Codespoti & Assoc, PC, plaintiff.

Ikechukwu Umeugo, Umeugo & Assoc., West Haven, CT; for Grew & Codespoti Design, P.C., plaintiff.

Daniel Shepro, Heidi C. McGee, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, Peter D. Clark, Michael Cuff Deakin, Shelton, CT, for Kevin B. Bartlett, defendant.

Daniel Shepro, Heidi C. McGee, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, Peter D. Clark, Michael Cuff Deakin, Shelton, CT, for Bartlett Const & Dev Corp, defendant.

Heidi C. McGee, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, for Gary Tierney dba Design Two, defendant.

Vincent J. Dowling, Elizabeth Fairbanks Flynn, Cooney, Scully & Dowling, Hartford, CT, for William Grumman, dba Grumman Engineering, defendant.

Stefan Richard Underhill, Day, Berry & Howard, Stamford, CT, for William M. Sharp, defendant.

### RULING ON APPLICATION FOR PREJUDGMENT REMEDY

FITZSIMMONS, United States Magistrate Judge.

This is a lawsuit arising out of the alleged use by defendants of a site plan developed by plaintiffs for a senior housing development in orange. Plaintiffs are claiming a copyright violation as well as unjust enrichment, and seek a prejudgment remedy in the amount of $600,000. A two-day hearing on the application was conducted in January 1999 and post-hearing briefs were subsequently filed. For the reasons that follow, the Application for a Prejudgment Remedy [**Doc. # 29**] is **GRANTED** in the amount of $97,000.

### FACTUAL FINDINGS

### MERITS OF THE LAWSUIT

1. On March 5, 1996, the town of Orange publicly opened six proposals for the development of a senior housing project. Each of the proposals was required to conform to certain stated requirements in the Request for Proposal.

2. One proposal, submitted by T & M Building Company, included an illustrative site plan created by the plaintiffs. Plaintiffs' plan included 58 units in a combination of single family detached, duplex and fourplex buildings. [Exhibit 1]

3. Defendants also submitted a proposal, which contained 48 units in 12 identical four-unit buildings. [Exhibits 3, 509].

4. Town officials subsequently decided that, rather than accept any of the proposals, they would use the project to settle an outstanding lawsuit with Louis D'Amato of Milford. In that settlement agreement, the town agreed to give D'Amato the development rights to the parcel with the understanding that it would be developed by someone else. D'Amato sold the development rights for the parcel to the defendant Bartlett for $985,000 for 48 units.

5. The proposal submitted to the town by defendant Bartlett Construction was prepared by the defendant Gary Tierney.

6. Kevin Bartlett told Tierney that D'Amato showed him the plaintiffs' illustrative site plan, and said that plaintiffs' plan was the subject of D'Amato's discus-

sions with the town, because the town had informally expressed satisfaction with the 58 units arranged according to the Codespoti plan.

7. Bartlett gave Tierney the copies of the Codespoti plan he had obtained from D'Amato, and said that D'Amato had told Bartlett that tampering substantially with the document would upset a complex and delicate deal. Bartlett told Tierney to give their design "the feel" of the Codespoti design.

8. Tierney consulted and used the Codespoti plan in preparing a revised site plan for the town's approval. This plan, exhibit 510, was submitted to the town on September 20, 1996.

9. Based on D'Amato's information and statements of town officials that they liked the Codespoti plan, Kevin Bartlett made an appointment with Jeffrey Gordon of Codespoti and asked Codespoti for a business proposal. Codespoti asked about performing architectural services and surveying. Bartlett told them he was looking for a site engineer.

10. Bartlett made no agreement with Codespoti Associates and did not tell anyone connected to Codespoti that his plans were based on their design concept. Bartlett never received Codespoti's permission to make any use of the Codespoti plans.

11. Tierney made further revisions to the plans and asked William Sharp to apply his seal to the plans, as Tierney's license had lapsed. Sharp did so, without knowledge that Tierney had used the Codespoti plans to create the Bartlett design.

12. Bartlett obtained approval for the project from the Town of Orange and built the project, based on plans that were derivative works of the Codespoti plans.

13. Codespoti registered the illustrative site plan and preliminary grading plan with the Library of Congress on October 16, 1996. [Exhibit 2]

14. At some point, Codespoti sent cease and desist letters to the defendants, notifying them that they were making unauthorized use of the copyrighted plans.

## DAMAGES

1. Codespoti created the site plan for T & M Builders, under an arrangement through which Codespoti was paid its expenses ($6,500). Had T & M been the successful bidder, Codespoti expected to realize approximately $250,000 on the construction of the project plus bonuses of $1,000 per unit closed, depending on the success of the project. However, the town sold the development rights to D'Amato and, apparently, D'Amato offered T & M an opportunity to participate in the project, which T & M declined.

2. Based on time records kept by Codespoti, the cost in time spent to create the site plans was $38,909.27. [Exhibit 504]

3. In August 1996, Codespoti offered its services to Bartlett. For "complete architectural services" and "engineering and site planning services," the quote totaled $97,000. [Exhibit 505]

4. Jeffrey Gordon, a Codespoti Vice President and partner, testified in response to the Court's questions at the hearing that Codespoti would have permitted Bartlett to use the drawings for the amount specified in Exhibit 505.

5. Plaintiff offered no evidence on the profits actually realized by defendants from the use of the Codespoti plans.

## DISCUSSION AND CONCLUSIONS OF LAW

█ Copyright infringement occurs when one "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a) Plaintiffs have alleged that defendants have violated two of their exclusive rights as copyright holders: "to reproduce the copyrighted work in copies ..." and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1)–(2). The term "derivative work" is defined by statute to mean:

a work based upon one or more preexisting works, such as a translation, musical arrangement, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed or adopted. A work consisting of editorial revision, annotation, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101. In our circuit, a claim for copyright infringement is established by a showing of "ownership of a valid copyright and the defendant's infringement by unauthorized copying." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir.1992).

Plaintiffs have shown that they own a valid copyright in the site plan. The copyright was registered on October 16, 1996. They have also shown that the defendants Bartlett, Bartlett Construction, and Tierney used plaintiffs' site plan without authorization, and prepared modified versions of it, derivative works, from which the senior housing project was built in Orange. *Demetriades v. Kaufmann*, 680 F.Supp. 658, 663 (S.D.N.Y.1988) (holding "that the unauthorized reproduction of copyrighted architectural plans constitutes infringement, and the court may enjoin such copying and ultimately award damages for that action consistent with 17 U.S.C. §§ 502–05.").

 Defendants first challenge the claim that copyright protection extended to plaintiffs' drawings. The Court finds that it did. The subject matter of the RFPs did not impose any inherent similarity on the proposals received by the town. In fact, the original RFP designs of Codes-

poti and Bartlett were quite different from each other, despite the existence of certain requirements. They differed fundamentally in the number of units, in the arrangement of the units, and in the layout of the roads and driveways. Copyright protection attached to the Codespoti illustrative site plan.[1]

] Defendants next claim that the copyright was not registered until after the copying was done, and that the "publication" of the plans by the town's opening of the RFPs in March 1996 destroyed any existing copyright in the work. The Court cannot so find. Submitting proposed site plans to the town does not put those site plans in the public domain and deprive them of protection under the copyright law. *East/West Venture v. Wurmfeld Associates, P.C.*, 722 F.Supp. 1064, 1066 (S.D.N.Y.1989).

While plaintiffs also make a claim of unjust enrichment, they did not make a separate legal argument about the likelihood of their prevailing on this claim, as distinguished from the copyright claim.

Based on the foregoing, the Court finds probable cause to believe that the plaintiffs will prevail at least on their claim of copyright infringement against the defendants Kevin Bartlett, Bartlett Construction & Development Corp. and Gary Tierney.

No evidence was presented to support a prejudgment remedy against either William Grumman or William M. Sharp.

 Damages for copyright infringement include statutory damages, attorneys' fees and costs, as well as actual damages. *See* 17 U.S.C. §§ 504, 505.[2] Plaintiffs seek the fair market value of the plans, which they contend is more than

---

1. The parties did not agree on which, if any, of the plans in Bartlett's possession bore a copyright designation. The Court notes, however, that defendant Sharp seeks discovery to determine "precisely what works have been registered with the Copyright Office and precisely who are the registered owners of those copyrights." [Doc. # 46 at 3 n. 2]. Defen-

dants Bartlett and Bartlett Construction do not challenge plaintiffs' registration of their drawings for purposes of opposing the PJR application. [Doc. # 56 ¶ 12].

2. The availability of certain of these remedies is limited by 17 U.S.C. § 412(2).

$600,000. Citing *Eales v. Environmental Lifestyles, Inc.,* 958 F.2d 876 (9th Cir. 1992), they also claim "all profits attributable to the infringement and to any ascertainable indirect profits."

 In an application for prejudgment remedy, plaintiffs have the burden of showing probable cause that they will prevail in an amount equal to or greater than the amount of the prejudgment remedy sought, taking into account defenses, setoffs, and counterclaims. The plaintiffs have presented insufficient evidence to support their application for $600,000. Plaintiffs' memorandum argued that the fair market value was the $250,000 that T & M was prepared to pay, plus an unspecified bonus. However, this amount was premised on T & M being selected to build the project, and it is undisputed that T & M owed Codespoti nothing if they did not receive the award.

■ Instead, the Court finds, based upon Exhibit 505 and the testimony of Jeffrey Gordon, that plaintiffs were willing to provide architectural, engineering and site planning services to Bartlett for $97,-000, in accordance with the offer contained in Exhibit 505. In that letter, Joseph Codespoti said, "We understand that you may have engaged an architect for this project, and if that is the case, we would be more than willing to work with him and provide any or all engineering and site planning services and/or surveying services as listed above." Although defendants were unwilling to pay this amount, plaintiffs would have accepted $97,000 for these plans. The measure of fair market value damages cannot be more than the maximum that plaintiffs were willing to accept, had defendants been willing to pay.

While plaintiffs may well be entitled at trial to the profits attributable to use of the infringing plans, plaintiffs at the hearing provided no evidence from which the Court can calculate defendants' profits on the project at this stage of the proceedings.

*CONCLUSION*

Plaintiffs' Application for a Prejudgment Remedy [**Doc. # 29**] is therefore **GRANTED** in the amount of $97,000.

SO ORDERED.